IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2003 Session

## WILLIAM A. DALTON, ET AL. V. GERALD W. DALE, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 00C-3165     Barbara N. Haynes, Judge**

_____

**No. M2002-01205-COA-R3-CV - Filed March 4, 2003**

_____

Defendant appeals adverse summary judgment as to diminution in value of a 1995 Jaguar XJ6 automobile based upon alleged undisputed expert testimony. Judgment is reversed, and the case is remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and DON R. ASH, SP. J., joined.

W. Carl Spining, Nashville, Tennessee, for the appellant, Gerald W. Dale.

William H. Farmer, Nashville, Tennessee, for the appellees, William a. and M. Charleston Dalton.

**OPINION**

On November 2, 1999, Plaintiff, M. Charleston Dalton, was driving her 1995 Jaguar XJ6 automobile southward on Cleghorn Avenue in Davidson County, Tennessee. When she approached the intersection of Cleghorn Avenue and Abbott Martin Road, she stopped her vehicle with the intention of turning left. Defendant, Gerald W. Dale, was, at that time, driving his 1993 Toyota Corolla automobile southward on Cleghorn Avenue and struck the Dalton Jaguar from behind. William A. Dalton and M. Charleston Dalton filed suit against Gerald Dale on October 31, 2000, seeking compensatory damages for personal injury and damages to the Jaguar. On January 11, 2001, Dale answered the Complaint essentially admitting fault but contesting the amount of damages.

Tennessee Farmer's Mutual Insurance Company, as uninsured motorist carrier for Plaintiffs was joined pursuant to Tennessee Code Annotated section 56-7-1206. Tennessee Farmers Mutual filed an answer denying the uninsured motorist status of Defendant and cross-claimed against him

on its subrogation claim for medical expenses, repair of the Jaguar, and rental cost of a replacement vehicle.

On November 4, 2001, an Agreed Order was entered providing, "The parties agree that this case will be set for a settlement conference on March 20, 2002 at 9:00 a.m. The parties agree that this case will be set for trial on April 30, 2002. The trial of this matter is expected to take two (2) days."

On February 13, 2002, Plaintiffs filed a Motion to Amend the Complaint asserting the trial date of April 30, 2002 and, further, that the parties had settled all issues except the issue of the diminution in value of Mrs. Dalton's XJ6. The Motion also asserted that the uninsured motorist carrier had been released and that Plaintiffs wished to withdraw their jury demand. Leave was granted to amend, and an Amended Complaint was filed reducing the claim to one seeking only damages for diminution of value of the Jaguar.

On February 13, 2002, Plaintiffs filed a Motion for Judgment on the Pleadings pursuant to Tennessee Rule of Civil Procedure 12.03 on the issue of liability. On that same date, Plaintiff filed a Motion pursuant to Rule 56 of the Tennessee Rules of Civil Procedure seeking summary judgment in the amount of $10,000 for diminution of value to the Jaguar. In their memorandum in support of this Motion for Summary Judgment, Plaintiffs asserted:

> 2. For diminution in value of their car, Plaintiffs formally served on Defendant's counsel on February 28, 2001, the attached letter of April 15, 2000, from their expert Barry Smith of Thoroughbred Motorcars as to the issue of the amount of diminished value sustained by the Plaintiffs' automobile (Mr. Smith's opinion is $10,000.00 in damages).
>
> 3. As of the filing of this motion, the Defendant has offered no expert as to diminished value. This Court entered an Agreed Scheduling Order on May 21, 2001 giving the Defendant until September 29, 2001 for Rule 26 disclosure. As Defendant either does not wish to offer an expert on the only issue remaining in this trial or is in excess of four (4) months late in doing so, the only proof available at trial on the issue will be the opinion offered in the letter attached.

On the following day, Plaintiffs filed with the court a letter from Barry Smith, General Manager of Thoroughbred Motorcars of Nashville dated April 15, 2000, providing:

> After inspection of this 1995 Jaguar VIN #SAJKX1742SC727436 I have determined that this vehicle has received extensive damage to the rear of the vehicle. The repair work appears to be satisfactory; however, when a luxury automobile is involved in an accident of this severity the value of the vehicle is diminished. It is the policy of Thoroughbred Motorcars to disclose all damages of this nature to prospective purchasers and furthermore Thoroughbred Motorcars will exclude the sale of these damaged vehicles for retail purposes. The value is diminished from retail to

wholesale and the wholesale value is diminished due to the damage. Even after repairs there is evidence of damage, as well as excessive wind noise around the doors and windows. It is my opinion that the vehicle has suffered diminished value of approximately $10,000 due to this accident.

In response to the Motion for Summary Judgment, Defendant filed a letter from Austin B. Chambers, owner of ABC Appraisal Service of Hendersonville, Tennessee, providing: "To Whom It May Concern: A 1995 Jaguar, gold in color, VIN#SAJKX1742SC727436, has been depreciated $8,000.00 as a result of being wrecked. This car was hit in the rear and sustained $16,300.00 in damages. The car has 57,851 miles on it."

On April 9, 2002, Defendant filed its notice demanding a jury trial as to the diminution of value issue, and, on April 17, 2002, Defendant filed its offer of judgment for $5,000 plus accrued court costs.

On April 23, 2002, the trial court filed its Memorandum and Order granting summary judgment. The order provides the following findings and conclusions, in pertinent part:

This matter came to be heard on April 5, 2002, upon Plaintiffs' motion for summary judgment. Upon consideration of the pleadings, exhibits, and arguments of counsel, the Court finds that the motion should be granted.

FINDINGS OF FACT

* * *

6. On February 28, 2001, Plaintiffs again sent their expert's April 15, 2000 opinion of the devaluation of car to Defendant's counsel in response to the November 11, 2001 discovery.
7. On May 21, 2001, Defendant's counsel agreed to a scheduling order which is entered setting the following deadlines, among others:
(a) July 31, 2001 - all written discovery completed;
(b) Defendant shall disclose their Rule 26 experts and Rule 26 statements by September 29, 2001 (none was disclosed and to this date, still hasn't been);
(c) All expert discovery depositions shall be completed by December 28, 2001 . . . (none were taken).
8. No extensions of time were requested by Defendant from any of these court-imposed deadlines.
9. On June 18, 2001, Defendant's counsel confirmed that he was offering policy limits of $25,000 to settle the bodily injury claims made in the Complaint, leaving property damages as the only remaining issue (and amount of bodily injury from UM carrier which doesn't affect this).

10. On October 26, 2001, Defendant's counsel executed an Agreed Order setting case for trial April 30, 2002.

11. On December 18, 2001, mediation was confirmed in writing to occur on January 17, 2002.

12. On January 17, 2002, Defendant appeared at the mediation with no expert or proof of diminution in value, although that was the only issue remaining to be settled. Defendant rejected Plaintiffs' claim for diminution in value.

13. On February 13, 2002, Plaintiff filed a Motion for Summary Judgment.

14. On March 28, 2002, Defendant made their first written request for an "expert" to view the client's car.

15. Defendant has failed to produce and disclose any expert as to the diminution to the value of the Plaintiffs' automobile.

16. The only expert disclosed in discovery is Barry Smith, the Plaintiffs' expert.

17. The only remaining issue at trial is the diminution of the Plaintiffs' automobile.

18. The only competent proof to be offered on the issue of diminution value is that of the Plaintiffs' expert.

19. Having offered no expert as to the diminished value of the Plaintiffs' automobile, the Defendant has no proof on the only issue remaining for trial.

CONCLUSION

Rule 56 of the Tennessee Rules of Civil Procedure provides that summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.

The issues at the heart of the Court's evaluation of a motion for summary judgment are whether a factual dispute exists, whether the disputed fact is material to the outcome of the case, and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

When the only issue before the Court is one of the kinds on which expert testimony must be presented, and nothing has been presented to challenge the expert opinion evidence submitted by the party moving for summary judgment, then summary judgment may be proper. *Bowman v. Henard*, 547 S.W.2d 527, 530 (Tenn.1977) (citing Wright & Miller, Civ. Sec. 2738 at 692-694).

The Defendant, for over two years, had ample opportunity to obtain and disclose an expert witness as to the diminished value of the Plaintiffs' automobile. The Defendant entered into an agreed scheduling order setting deadlines for the disclosure of experts. The deadlines passed with no activity from the Defendant, not even a request for an extension of time. The[y] agreed upon a trial date, knowing at the time that the only expert disclosed was Mr. Smith for the Plaintiffs. Mediation was entered into, and again, Defendant participates without a disclosed expert.

The only witness qualified to testify in this case as to value would be the owner (the Plaintiff), and the only disclosed expert, Mr. Smith. See TRE 701(b) and 702.

The only proof that can be offered at trial is therefore the uncontroverted testimony of Plaintiff's expert, Mr. Smith, which is that the Plaintiff's automobile was diminished in value by $10,000.

It is therefore ORDERED, ADJUDGED, and DECREED that judgment be entered against the Defendant and for the Plaintiffs in the amount of ten thousand dollars ($10,000.00), for which execution may issue if necessary. Costs are assessed against the Defendant.

Defendant filed a timely appeal.

The grant of summary judgment in this case was improper for two reasons - first, is the failure of Plaintiff to comply with T.R.C.P. Rule 56.06; second is the freedom of the trier of fact to accept or reject undisputed expert testimony.

Tennessee Rule of Civil Procedure 56.06 provides:

Form of Affidavits – Further Testimony – Defense Required. – Supporting and opposing affidavits shall be made on personal knowledge, such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Expert opinion affidavits shall be governed by Tennessee Rule of Evidence 703.

The record contains no "uncontroverted testimony" of the expert witness for Plaintiff, Mr. Smith. It contains only a copy of an unsworn letter filed by counsel for Plaintiff as a part of his Motion for Summary Judgment.

Plaintiff, in argument before this Court, seeks to avert the mandates of Rule 56.06 by asserting that the Smith letter was produced in discovery under Rule 26 and that such discovery response was filed with the Court under the affidavit of Plaintiffs' counsel. Tennessee Rule of Civil Procedure 26 entitled General Provisions Governing Discovery has nothing to do with summary judgment.

T.R.C.P. Rule 56.06 is practically, verbatim, identical to Federal Rule of Civil Procedure 56(e).[1] In such circumstances, decisions of federal courts construing Federal Rule 56(e) are relevant to our discussion. *Gamble v. Hospital Corp. of Am.*, 676 S.W.2d 340, 342 (Tenn.Ct.App. 1984).

In a similar context to the case at bar, the United States 9th Circuit Court of Appeals observed:

> Those papers did not comply with Rule 56(e), and summary judgment should not have been predicated on them. (Automatic Radio Mfg. Co. v. Hazeltine Research, Inc. (1950) 339 U.S. 827, 831, 70 S.Ct. 894, 94 L.Ed.1312; Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co. (2d Cir. 1965) 353 F.2d 946, 952-953; F. S. Bowen Elec. Co. v. J. D. Hedin Const. Co. (1963) 114 U.S.App.D.C. 361, 316 F.2d 362; Washington v. Maricopa County (9th Cir. 1944) 143 F.2d 871, cert. denied (1946) 327 U.S. 799, 66 S.Ct. 900, 90 L.Ed. 1024.) Rule 56(e) requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that that affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers * * * referred to in an affidavit shall be attached thereto or served therewith."
>
> Mr. Watkins' affidavit was not made on personal knowledge; it did not set forth facts as would be admissible in evidence; and it did not show that Mr. Watkins was competent to testify to the matters stated therein.
>
> The exhibits annexed to Mr. Watkins' affidavit are copies of intradepartmental memoranda, copies of copies of letters addressed to third persons by third persons, and copies of documents styled revocation notices addressed to third persons by third persons. None of the documents was authenticated, and all of them were hearsay.

*Unites States v. Dibble*, 429 F.2d 598, 601-02 (9th Cir. 1970)(footnote omitted).

Judge Robert Bork, dissenting in *Catrett v. Johns-Manville Sales Corp.*, cautioned as to why evidence proffered under Federal Rule of Civil Procedure Rule 56 should be in admissible form.

> In a departure from established rules, the majority suggests that the district judge could consider inadmissible evidence of causation because the admissibility

---

[1] The two differences in the two rules not deemed to be of any significance are: (1) In the ninth line of Tennessee Rule 56.06 appears the phrase, "but his or her response;" whereas in Federal Rule 56(e), the corresponding phrase is, "but the adverse party's response." (2) The last sentence of Tennessee Rule 56.06 provides: "Expert opinion affidavits shall be governed by Tennessee Rule of Evidence 703." This sentence does not appear in Federal Rule 56(e).

problems with the evidence might eventually be cured. This holding destroys any incentive that parties now face to put evidence in admissible form prior to trial, and diminishes the utility of pre-trial efforts to narrow and isolate the factual issues that are to be tried. The majority's holding will inevitably lead to pointless trials where anticipated factual disputes fail to materialize because *admissible* evidence cannot be found. The majority's innovation on this point will substantially undermine the utility of summary judgment procedures while yielding no concomitant benefits.

*Catrett v. Johns-Manville Sales Corp.*, 756 F.2d 181, 191 n. 10 (D.C. Cir. 1985) (emphasis in original).

Admittedly, Judge Bork's cautionary view is compromised by the subsequent history of this celebrated case. What had happened in the case was that one of the defendants, Celotex Corporation, had moved for summary judgment on the basis that Mrs. Catrett had produced no evidence that her husband had been exposed to Celotex products, and, thus, no causal relation could be established between the products of Celotex and Mr. Catrett's asbestosis. The district court granted Celotex' Motion for Summary Judgment; however, in a divided opinion, the Court of Appeals for the District of Columbia reversed on the basis that Celotex had not properly supported its Motion for Summary Judgment. Judge Bork dissented asserting that, while the burden was on Celotex to show by the record that there was no dispute as to material facts, it was not always necessary to produce affirmative evidence to establish such. Said Judge Bork:

> In my view, the majority opinion rests on a flawed premise: that a district judge can never grant summary judgment, even in an obviously meritless case, unless a party first makes a motion pursuant to Rule 56 and supports that motion with admissible evidence. The result in this case is that the plaintiff is granted an unsought extension of time to cure the defects in her proof. The premise being wrong, the result is gratuitous.
> The majority errs in supposing that a party seeking summary judgment must always make an affirmative evidentiary showing, even in cases where there is not a triable, factual dispute. The cases the majority cites hold only that a moving party has the burden of showing the absence of a material, factual dispute, even on issues where his opponent would have the burden of proof at trial. . . .
> These cases do not consider the central question here: whether that showing must invariably be made with evidence.

*Catrett*, 756 F.2d at 188.

Judge Bork then provides his answer to the question, stating:

> [I]t [is] clear that the movant may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent. If no evidence could be mustered to sustain the nonmoving party's

position, a trial would be useless and the movant therefore is entitled to judgment as a matter of law. In this sense the theory underlying summary judgment is similar to that of the directed verdict motion.

*Id.* at 181 (quoting 10A C.Wright, A.Miller & M.Kane, Federal Practice and Procedure § 2727, at 130 (1983)).

In its landmark decision, *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L.Ed.2d 265, 106 S.Ct. 258 (1986), the United States Supreme Court agreed with Judge Bork's dissent and, in lucid and informative opinions by Chief Justice Renquist and Justice Brennan, laid out, in explicit detail, the requirements of Federal Rule of Civil Procedure 56.[2] The United States Supreme Court, after agreeing with Judge Bork that the non-moving party does not always have to produce affirmative evidence to meet his burden under Federal Rule 56, then addressed the question of whether or not Mrs. Catrett had met her burden in responding to the Summary Judgment Motion of Celotex by producing three documents, in raw form and unsworn, that purported to establish that her husband had in fact been exposed in the workplace to Celotex products. At this point, Chief Justice Renquist and Justice Brennan parted company. Justice Brennan asserted that these documents were adequate to overcome summary judgment and that the case should be remanded to the district court for trial on the merits. Said Justice Brennan:

> Approximately three months earlier, Celotex had filed an essentially identical motion. Plaintiff responded to this earlier motion by producing three pieces of evidence which she claimed "[a]t the very least . . . demonstrate that there is a genuine factual dispute for trial," (1) a letter from an insurance representative of another defendant describing asbestos products to which plaintiff's decedent had been exposed, (2) a letter from T. R. Hoff, a former supervisor of decedent, describing asbestos products to which decedent had been exposed, and (3) a copy of decedent's deposition from earlier workmen's compensation proceedings. Plaintiff also apparently indicated at that time that she intended to call Mr. Hoff as a witness at trial.
> Celotex subsequently withdrew its first motion for summary judgment. However, as a result of this motion, when Celotex filed its second summary judgment motion, the record *did* contain evidence - - including at least one witness - - supporting plaintiff's claim. Indeed, counsel for Celotex admitted to this Court at oral argument that Celotex was aware of this evidence and of plaintiff's intention to call Mr. Hoff as a witness at trial when the second summary judgment motion was filed.

*Celotex Corp.*, 477 U.S. at 335-36, 91 L.Ed.2d at 281-82, (Brennan dissenting) (citations and footnotes omitted).

---

[2] Tennessee subsequently explicitly adopted the reasoning of Chief Justice Renquist and Justice Brennan in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

Chief Justice Renquist, for the majority, however, determined:

> But the Court of Appeals declined to address either the adequacy of the showing made by respondent in opposition to petitioner's motion for summary judgment, or the question whether such a showing, if reduced to admissible evidence, would be sufficient to carry respondent's burden of proof at trial. We think the Court of Appeals with its superior knowledge of local law is better suited than we are to make these determinations in the first instance.

*Id.* at 327.

On the remand to the District of Columbia Court of Appeals, Judge Kenneth Starr, speaking for the majority, took a liberal view as to the offerings of Mrs. Catrett observing that one of her offerings before the district court had never been objected to by Celotex, and, thus, her offerings, even if not in the form required by Rule 56(e), were sufficient to overcome summary judgment. With Judge Bork dissenting, the case was then remanded to the district court for trial on the merits. *See Catrett v. Johns-Manville Sales Corp*, 826 F.2d 33 (D.C. Cir. 1987).

Obviously, the better practice would be to comply with the specific requirements of Tennessee Rule of Civil Procedure 56.06 and avoid the pitfall. It is not necessary, however, to predicate reversal of this case on failure to meet Rule 56.06 requirements.

Even giving the April 15, 2000 letter from Barry Smith evidentiary character, it cannot form a predicate for summary judgment. The trial court relied alone on *Bowman v. Henard*, 547 S.W.2d 527 (Tenn. 1977) in holding that summary judgment may be predicated upon the unimpeached and unchallenged affidavits of experts. *Bowman* is not controlling in the case at bar. *Bowman* involved a medical malpractice action in which the affidavits of expert medical witnesses for the defendant were countered only by affidavits of the attorneys representing the plaintiff. Expert testimony in such cases is mandated by statute. Tenn. Code Ann. § 29-26-115. The only time that the expert testimony requirement can be averted is where the alleged malpractice lies within the common knowledge of laymen. *Baldwin v. Knight*, 569 S.W.2d 450, 456 (Tenn. 1978); *Keeton v. Maury County Hosp.*, 713 S.W.2d 314 (Tenn. Ct. App. 1986). In all other medical malpractice cases, expert testimony is required in order to establish the standard of care applicable and the breach thereof by the defendant. *See Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998); *Ayers v. Rutherford Hospital, Inc.*, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984).

Under these circumstances, and recognizing that medical expert opinion affidavits on behalf of Plaintiff were necessary to sustain Plaintiff's case, the court in *Bowman* held:

> The affidavit of an attorney stands precisely on the same plane with all other affidavits. Accordingly, it must rest upon his personal knowledge in an area in which he is competent to testify. The affidavit of the attorney in this case was totally ineffectual as a response.

In summary we hold that, in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise. In those cases wherein the acts are complained of are within the ken of the common layman, the affidavit of medical experts may be considered along with all other proof, but are not conclusive.

*Bowman*, 547 S.W.2d at 531.

Nothing appears in this case to require the acceptance as a matter of law of undisputed expert testimony. The Tennessee Supreme Court has held:

Appellant places great reliance upon the testimony of Sgt. Kilpatrick that in his opinion appellee's proposed business would create a traffic hazard, but, in our view, this opinion testimony – although not contradicted by an opposing contrary opinion – is not conclusive. Expert opinions, at least when dealing with highly complicated and scientific matters, are not ordinarily conclusive in the sense that they must be accepted as true on the subject of their testimony, but are purely advisory in character and the trier of facts may place whatever weight it chooses upon such testimony and may reject it, if it finds that it is inconsistent with the facts in the case or otherwise unreasonable. Even in those instances in which no opposing expert evidence is offered, the trier of facts is still bound to decide the issue upon its own fair judgment, assisted by the expert testimony. *Act-O-Lane Gas Service Co. v. Hall*, 35 Tenn.App. 500, 248 S.W.2d 398 (1951).

*Gibson v. Ferguson*, 562 S.W.2d 188, 189-190 (Tenn. 1976); *see also Chambers v. Bradley Co.*, 384 S.W.2d 43 (Tenn. Ct. App. 1964); *Roberts v. Roberts*, 827 S.W.2d 788 (Tenn. Ct. App. 1991); *City of Johnson City v. Outdoor West, Inc.*, 947 S.W.2d 855 (Tenn. Ct. App. 1996); *Dickey v. McCord*, 63 S.W.3d 714 (Tenn. Ct. App. 2001); *Thurmon v. Sellers*, 62 S.W.3d 145 (Tenn. Ct. App. 2001).

In the latter case, this Court held:

Expert testimony is not conclusive, even if uncontradicted, but is rather purely advisory in character, and the trier of fact may place whatever weight it chooses on such testimony. *See Gibson v. Ferguson*, 562 S.W.2d 188, 189-90 (Tenn. 1976); *England v. Burns Stone Co., Inc.* 874 S.W.2d 32, 28 (Tenn. Ct. App. 1993). Further, the trier of fact may draw upon its common knowledge and may arrive at a conclusion contrary to the expert testimony. *See England*, 874 S.W.2d at 38.

*Thurmon*, 62 S.W.3d at 162.

As a practical matter, one may question why, in a case of admitted liability, with Plaintiff seeking $10,000, Defendant offering $5,000, and Defendant tentatively offering an expert to say $8,000, this case is still in court, but it suffices to say that no party can or should be compelled to throw in the towel. The judgment of the trial court is reversed, and the case is remanded for trial on the merits.

Costs of the cause are assessed against Appellees Dalton.

_____
WILLIAM B. CAIN, JUDGE